## PENOSI v. UNITED STATES.

### No. 13637.

United States Court of Appeals
Ninth Circuit.

Aug. 14, 1953.

Frank Desimone, Beverly Hills, Cal., for appellant.

Walter S. Binns, U. S. Atty., Ray H. Kinnison, George M. Treister, Manuel L.

Real, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before MATHEWS, HEALY and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellant was tried by the Court sitting without a jury and convicted on two counts of an indictment charging him and a co-defendant, Louis A. Salerno, with the crime of receiving, concealing and facilitating the transportation of narcotics in violation of 21 U.S.C.A. § 174, and conspiring to commit that offense in violation of 18 U.S.C.A. § 371. He was sentenced to imprisonment for three years on each of the two counts and a fine of $1,000 on the substantive count, the sentences of imprisonment to run concurrently.[1]

Appellant challenges the judgment primarily on the ground that the evidence is insufficient to sustain the judgment. We summarize the pertinent portions of the evidence.

On November 1, 1951, Federal Narcotic Agent Charles Van Natter and a government informer met co-defendant Louis A. Salerno in a bar in Hollywood, California. During the course of their conversation reference was made to narcotics. At Salerno's request, the three men met again on November 3, 1951, at the same bar and the sale of narcotics was discussed. Salerno told the government men that if they wished to buy 20 ounces of heroin he would send a telegram to New York and have the heroin delivered by plane to Hollywood at a price of $250.00 per ounce. Until the shipment arrived from New York Salerno said he would supply the agent with a smaller quantity of heroin.

At or near 12 M. of November 4th, Salerno sent the following telegram to appellant in New York signed with the fictitious name, "Louis Ricco": "Finish Work Need 20 More Let Me Know When You'll Be Here."

On the afternoon of November 5th, the government men met Salerno at his motel room pursuant to an appointment made the

---

1. Co-defendant Salerno was found guilty on three counts. His appeal was dismissed on April 22, 1953.

previous evening. Salerno then and there sold agent Van Natter four ounces of heroin at an agreed price of $1,000, payment being made in marked government funds. During a conversation had at the time of this sale, Salerno stated that he expected delivery of the larger amount of narcotics from New York within the next two days. The parties made an appointment to meet again at 10:00 p. m. the same night, November 5th, to discuss the sale of the 20 ounces of heroin.

At 7:51 p. m. Los Angeles time, November 5th, appellant dispatched from New York the following telegram to Salerno addressed to "Louis Rico": "Arriving 8:20 P.M. Tuesday American Airlines Flight 609." Salerno admitted the receipt of appellant's telegram.

The two government men and Salerno met at the bar at approximately 10:00 p. m., November 5th, pursuant to an agreement entered into earlier that day. Salerno then stated that he had wired one of his men in New York to bring the heroin and that he expected him to arrive late the following night, November 6th. Salerno arranged a meeting the following night at 10:00 p. m. to effect the sale of the 20 ounces of heroin.

The flight referred to in appellant's telegram to Salerno was scheduled to arrive in Los Angeles at 8:20 p. m., November 6th, but due to weather conditions appellant did not arrive until the early morning of November 7th, at 12:38 a.m. The government agents went to the bar on the night of November 6th, as arranged, but Salerno did not appear. A few minutes after midnight they received a phone call from Salerno postponing the meeting until 10:00 a. m., November 7th.

Appellant arrived in Los Angeles the morning of November 7th and upon arrival was met at the airport by Salerno and taken to the latter's hotel room. At 10:00 a. m. agent Van Natter met Salerno in a downtown restaurant and was told by Salerno that the heroin was in and that he was ready to make delivery. Van Natter agreed to buy the 20 ounces previously agreed upon plus an additional 14 ounce package for a price of $8500. Salerno said

that he would go to the hotel where "his partner" was waiting, get the narcotics, and deliver them to the agent in about an hour.

Two officers followed Salerno to his hotel and arrested him when he came out of the hotel ten minutes later carrying two packages wrapped in flowered paper. One sealed package contained 20 ounces of heroin and the other package contained 14 ounces of heroin. The arresting officers accompanied Salerno to his hotel room where appellant was found in bed. Wrapping paper of the same type as that in which the packages of heroin were wrapped was found in the room. Salerno admitted that appellant was present in the room at the time he wrapped the packages of narcotics. Currency in the amount of $2,800, including $960 of the marked government bills was discovered in a bureau drawer.

■■ Viewing the evidence adduced in this case, as we are required to do, in the light most favorable to the Government, we find no difficulty in determining that there is substantial evidence to support the judgment. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Woodard Laboratories v. United States, 9 Cir., 1952, 198 F.2d 995.

■ Appellant strongly urges that when the Government relies upon circumstantial evidence for a conviction, the evidence must not only be consistent with guilt but inconsistent with every reasonable hypothesis of innocence. This is the language sometimes used in instructions to juries which, in many cases, serves no other purpose than to confuse. But here, the experienced trial Judge was conversant with the rules of evidence and knew how to apply them. He had no difficulty in finding that the evidence in this case was inconsistent with every reasonable hypothesis of innocence and neither do we. If the evidence is sufficient to convince beyond a reasonable doubt that the charge is true it is immaterial whether it be circumstantial or direct. Guilt can be satisfactorily established from " a 'development and a collocation of circumstances'." Glasser v. United States,

315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680.

On cross examination a witness made a response which appellant's counsel moved to strike. The Court denied the motion. Appellant urges this as error. Before a jury immaterial evidence may sometimes be harmful. Not so before a Court. It is apparent that the Court, in this instance, would attach no significance to answer given. The argument is completely devoid of merit.

Judgment affirmed.